THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EVELYNE BEAUBRUN,  :  <br> Plaintiff,  : <br> : <br> v.  : <br> : <br> THOMAS JEFFERSON UNIVERSITY, et al.,  : <br> Defendants.  : <br> : | NO. 07-cv-0879 |

**MEMORANDUM AND ORDER**

**I. INTRODUCTION**

Plaintiff Evelyn Beaubrun ("Beaubrun") brings claims against defendant Thomas Jefferson University for wrongful termination, disparate treatment, and hostile environment under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 *et seq*.; The Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*.; The Pennsylvania Human Relations Act ("PHRA"); and 42 U.S.C. § 1981, *et seq*. ("§ 1981). She brings the same three claims against defendant Kate Vandergrift[1] ("Vandergrift") under § 1981 and the PHRA. Per agreement of the parties, all claims against Vandergrift under Title VII and the ADEA were dismissed. Plaintiff also brings a state law assault claim against both defendants.

Defendants filed a motion for summary judgment on all of the plaintiff's claims. This Court has jurisdiction over the federal claims under 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claim under 28 U.S.C. § 1367. For the reasons stated below, I

---

[1]This is the way Vandergrift's name is spelled on the court's docket and the way it will appear throughout this explanation and order. However, in the defendants' motion for summary judgment, it is spelled Vandegrift.

grant defendants' motion.

## II. BACKGROUND[2]

Beaubrun, a 47-year-old black female, was interviewed by two supervisors, Vandergrift and Nikole Papas ("Papas"), in May of 2005 for a job as the Parent/Child Educator at Thomas Jefferson University's Family Center ("Family Center").  During this interview, Vandergrift questioned the validity of Beaubrun's educational credentials.  Nevertheless, after a delayed decision, Vandergrift hired Beaubrun at a starting salary of $28,000.  Beaubrun was supposed to start work on June 27th, but when she reported for orientation on that day, she was told she would not be able to begin until July 5th.  Vandergrift told other Family Center employees that Beaubrun had failed to show up for work on June 27th, when in fact Vandergrift herself had changed Beaubrun's start date.

When Beaubrun arrived on July 5th to begin work at the Family Center, she realized that little preparation had been made for her arrival.  Vandergrift asked Beaubrun to spend her entire first day of work merely reading a manual.  Additionally, two out of the three people Beaubrun supervised were absent from work on July 5th.

On her second day of work, July 6th, Beaubrun was assigned an office measuring 8 by 7.5 feet.  Her desk and chair were child-sized and uncomfortable and her office lacked a phone or computer.  By contrast, the three people whom Beaubrun supervised shared a larger office, which contained adult-sized furniture, a computer, and a telephone. Two of these three people were white, one was Hispanic, and two were less than 40 years old.  Shortly after being assigned her office, Beaubrun began to feel dizzy and sick because her office was too hot.  Beaubrun

---

[2] The facts are stated most favorably to plaintiff, the non-moving party.

complained about the temperature to a supervisor, Wynne Preble, who immediately contacted the maintenance department. However, no one came to adjust the ventilation until the next day.

On July 7th, Vandergrift told Beaubrun that she was being fired for complaining about her office. According to Beaubrun, Vandergrift did not want her own supervisor to find out that Beaubrun was dissatisfied with her office, and did not want to transfer Beaubrun to a different office because Vandergrift was afraid Beaubrun would get her "head big." Defendants' Appendix, Tab 2, Beaubrun Affidavit, 156. Vandergrift alleges that they received complaints from the staff regarding Beaubrun's aggressive style and non-nurturing attitude. Defendants' Appendix, Tab 4, Email from Papas to Vandergrift. Beaubrun's position was filled by a black female, who is over 40 years old. Beaubrun's discharge occurred only three days after she began working at the Family Center.

Beaubrun contends that her race and/or age accounted for her poor office conditions, lower wages, and termination. Defendants deny that Beaubrun was discharged after three days of work because of her race or age. Instead, they respond that Beaubrun was not a good fit for that particular job.

In support of her assault claim, Beaubrun contends that Vandergrift scratched Beaubrun's hand while pulling Beaubrun's security identification away from her and then threw the cord from the badge at Beaubrun.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c). Facts are material if they might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue exists when the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. Id. at 248-52.

Summary judgment is appropriate as a matter of law when the non-moving party has failed to make an adequate showing on an essential element of his case, as to which he has the burden of proof at trial. See Cleveland v. Policy Management Sys. Corp., 526 U.S. 795, 804 (1999). To overcome a summary judgment motion, a plaintiff may not rely on allegations or denials; a plaintiff must set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e).

## III. DISCUSSION

A.  Age Discrimination: Disparate Treatment Based On Wrongful Termination[3]

Beaubrun claims that she was discriminated against because of her age when she was discharged from the Family Center. In order to establish a *prima facie* case for age discrimination under the ADEA, a plaintiff must show that 1) she is over forty, 2) she is qualified for the position, 3) she suffered from an adverse employment action, and 4) her replacement was sufficiently younger to allow a reasonable inference of discrimination. Hill v. Borough of Kutztown, 455 F.3d 225, 247 (3d Cir. 2006). Beaubrun has met the first three requirements for a *prima facie* case under the ADEA, but has provided no evidence that would permit an inference of disparate treatment based on age. Beaubrun does not contest defendant's claim that she was

---

[3]It would be redundant to analyze Disparate Treatment and Wrongful Termination as two separate claims when the only adverse employment action suffered by the plaintiff is the termination. See infra note 6.

replaced by someone over the age of 40.  Beaubrun was born in 1961, and was either 43 or 44 at the time of her discharge; therefore no one over the age of 40 was sufficiently younger to permit a reasonable inference of discrimination.   Beaubrun cannot establish a prima facie case of age discrimination under the ADEA because she has provided insufficient evidence to meet the fourth prong of the test for a *prima facie* case.

B.  Racial Discrimination:  Disparate Treatment Based On Wrongful Termination[4]

Beaubrun claims that she was subjected to disparate treatment at the Family Center when she was wrongfully terminated because of her race.  For Beaubrun to prevail in her discrimination claim against the defendants,  Beaubrun must prove that the defendants intentionally discriminated against her.  To do so, Beaubrun must show that her race was a determinative factor in Vandergrift's decision to discharge Beaubrun.  St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511-12 (1993).   Beaubrun relies on circumstantial evidence of discrimination, therefore the *McDonnell Douglas* burden-shifting analysis applies to plaintiff's disparate treatment claims under Title VII, § 1981. and the PHRA[5].  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 93 S. Ct. 1817, 36 L.Ed. 2d 668 (1973); Texas Dep't Cmty. Affairs v. Burdine, 450 U.S. 248, 254 n. 6, 101 S. Ct. 1089, 67 L. Ed 2d 207 (1981); Goosby v. Johnson & Johnson Med. Inc., 228 F.3d 313, 318-319 (3d Cir. 2000); Jones v. School District of Philadelphia, 198 F.3d 403, 410 (3d Cir. 1999); Schurr v. Resorts Int'l Hotel, Inc., 196 F.3d 486, 499 (3d Cir. 1999); Simpson v. Kay Jewelers, 142 F.3d 639, 644 n. 5 (3d Cir. 1998).

---

[4]See supra note 3.

[5]The *McDonnell Douglas* analysis under Title VII, § 1981, and the PHRA is substantially similar; this order will only refer to Title VII.

As a first step in the *McDonnell Douglas* analysis the plaintiff must establish a *prima facie* case of discrimination. <u>Jones</u>, 198 F.3d at 410. If the plaintiff succeeds in doing so, the burden shifts to the defendant "'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" <u>Id.</u> If the defendant offers such a reason, the burden shifts back to the plaintiff to show that the legitimate reason presented by the defendant is a mere pretext for discrimination. <u>Id</u>.

1. *Prima Facie* Case

To establish a *prima facie* case of disparate treatment, a plaintiff must show that, (1) she is a member of a protected class; (2) she is qualified for the position; (3) she was subject to an adverse employment action; and (4) the action occurred "under circumstances that give rise to an inference of unlawful discrimination such as might occur when the position is filled by a person not of the protected class" (<u>Jones</u>, 198 F.3d at 410-11) or when "nonmembers of the protected class were treated more favorably." <u>Goosby v. Johnson & Johnson Med. Inc.</u>, 228 F.3d 313, 319 (3d Cir. 2000) (citing <u>Ezold v. Wolf, Block, Schorr and Solis Cohen</u>, 983 F.2d 509, 522 (3d Cir. 1993)).

Looking at the facts in the light most favorable to Beaubrun, she has provided sufficient evidence to meet the first three elements of a prima facie case of disparate treatment: she is a member of a protected class (she is black), she was qualified for the position (she had eighteen years of experience in the field of social work), and she suffered an adverse employment action (she was discharged).[6] However, Beaubrun has failed to present evidence sufficient to meet the

---

[6]The only evidence Beaubrun has provided of an occurrence that meets the standard for an adverse employment action is her termination. An action other than a discharge may qualify as an adverse employment action in a disparate treatment claim. <u>Jones</u>, 198 F.3d at 411. However, an adverse employment action must be "one that is 'serious and tangible enough to

fourth prong of the test, namely, that other employees outside of her protected class were treated more favorably at the Family Center. Nor has Beaubrun shown any other circumstances during her three days of employment indicating that race was a factor in her discharge.

Beaubrun contends that the following incidents give rise to an inference of discrimination: there was too little preparation made for her arrival, she was asked to spend the whole first day reading a manual, her office conditions were inadequate, she was not given a computer or telephone, her supervisees shared a larger office, she was questioned about the validity of her degree during her interview, there was a delay in her hiring decision, there was a delay in her start date, and two of her supervisees were absent from work on her start date. She provides no evidence, however, to infer that these circumstances were due to her race. Beaubrun emphasizes that the three people she supervised shared a larger, more spacious office and that two of them were white and one was Hispanic. However, one cannot, from these facts alone, infer unlawful discrimination based on race.

---

alter an employee's compensation, terms, conditions, or privileges of employment.'" Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001) (quoting Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 2001)). Beaubrun states that she was paid less than her predecessor, Papas, and that her lower salary was an adverse employment action. Beaubrun claims that she was denied a higher starting salary due to her race and/or age, despite allegedly having more experience than Papas, if one takes into account the increase in the cost of living between 1998 (when Papas was hired) and 2005. A claim of sub-standard wages may qualify as an adverse employment action in some cases, but here there is no evidence that Plaintiff's starting salary was lower than her predecessor's. Beaubrun's starting salary was $28,000 per year. At the time she was hired she had eighteen years experience in the field of social work. Her predecessor, Pappas, was hired as the Parent/Child Educator in 1998 at a starting yearly salary of $24,559.08 and was promoted to Family Service Coordinator in 2004 after earning a Masters Degree in Public Health. In 2001, after three years at the Family Center, Papas' salary increased to $28,668.64. Prior to her promotion in 2004, the highest Papas' salary reached was $31,631.60. After Papas' promotion, the position of Parent/Child Educator was not filled until Beaubrun was hired. Papas' income was less than Beaubrun's starting salary until she had been employed at the Family Center for three years; even taking the rise in cost of living into account, this is insufficient evidence to find an adverse employment action.

Beaubrun also claims she was discharged by Vandergrift because of her race. Considering Beaubrun's recounting of her discharge in the light most favorable to the plaintiff, there is insufficient evidence from which to infer discrimination. According to Beaubrun, Vandergrift said that she heard Beaubrun was not satisfied with her office, and was terminating her employment because Vandergrift did not want her own supervisor to become aware of this complaint and because she did not want Beaubrun to get a "big head." Beaubrun's own allegations are that she was terminated because of her complaint about her office. There is no evidence presented to infer that race played a role in Beaubrun's termination. Additionally, Beaubrun was replaced by a black female over the age of 40 and Beaubrun provides no evidence that other employees outside of her protected class were treated favorably.[7] Beaubrun has failed to meet the fourth prong of the *McDonnell Douglas* test and is therefore unable to establish a prima facie case of disparate treatment.

2. Legitimate, Nondiscriminatory Reasons and Pretext

Even if Beaubrun were able to establish a *prima facie* case, she would still fail under the *McDonnell Douglas* burden shifting analysis because she has shown no evidence that defendants' legitimate, nondiscriminatory reason for her discharge was merely a pretext for discrimination.

C. Hostile Environment

---

[7] Plaintiff emphasizes the differences in assigned offices between herself and her staff members, as well as her claim of wage discrimination. As explained previously, even viewed in the light most favorable to the plaintiff, these circumstances are insufficient to show that others outside of her protected class were treated favorably.

Beaubrun also makes a claim that defendants provided a hostile work environment under Title VII, the ADEA, the PHRA, and § 1981.[8]  Plaintiff's Response to Defendant's Summary Judgment Motion, 18.  In order to establish a prima facie case of  hostile environment, the plaintiff must show that (1) she was harassed because of her protected trait, (2) the discrimination was subjectively and objectively detrimental and severe or pervasive, and (3) respondeat superior liability exists.  Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 126 L.Ed. 2d 295 (1993) and Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1081 (3d Cir. 1996).  In determining the severity or pervasiveness of the allegedly hostile conduct, a court must look at the totality of the circumstances, including "the frequency of the discriminatory conduct, its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Harris, 510 U.S. at 23.  "'Offhanded comments, and isolated incidents (unless extremely serious)' are not sufficient to sustain a hostile work environment claim. . . .Rather, the conduct must be extreme to amount to a change in the terms and conditions of employment."  Caver v. City of Trenton, 420 F.3d 243, 262 (3d Cir. 2005) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed. 2d 662 (1998)).

The Aman court found that the plaintiffs presented sufficient evidence to conclude that their working environment was "pervaded by discriminatory 'intimidation, ridicule and insult.'"  Aman, 85 F. 3d at 1082 (quoting Harris, 114 S. Ct. at 370).  The plaintiffs in Aman endured racist remarks in their workplace for six years on a nearly daily basis.  Id.  They were referred to as "one of them" and "all of you," were told not to steal or touch anything, and were given

---

[8]The hostile environment analysis under Title VII, the ADEA, the PHRA, and § 1981 is substantially similar.

menial jobs.  Id.  In addition, the Aman court found evidence that the white employees were treated differently.  Id.

Beaubrun compares her situation to that of the plaintiffs in Aman, claiming that she was subjected to certain "code words" that infer discrimination.  85 F.3d at 1083.  In contrast to the plaintiffs in Aman, Beaubrun references only three verbal comments she believes were racially motivated during her three days of employment and provides no evidence that employees outside of her protected class were treated differently.

First, Beaubrun points specifically to Vandergrift's statement that Beaubrun was discharged because she was not a "perfect fit."  The statement is neither severe nor pervasive, nor does Beaubrun present evidence that this comment was in any way motivated by Beaubrun's race and/or age.  Furthermore, according to Beaubrun, this comment was made post-termination as part of defendants' explanation for why Beaubrun was terminated.  Beaubrun alleges that Vandergrift did not provide the "perfect fit" explanation as a reason for her discharge at the time of her termination.  This comment could not be relevant to Beaubrun's hostile environment claim; it was made after she was discharged.

Beaubrun also claims that Vandergrift told Beaubrun's peers she had failed to show up for work on June 27, 2005.  Even assuming that Vandergrift did say this with malicious intent, Beaubrun provides no evidence that this statement was at all related to her age and/or race. "Mere offensive utterances" are not sufficient to support a claim of hostile environment.  Harris, 510 U.S. at 23.

Lastly, Beaubrun claims that Vandergrift questioned her educational qualifications during her interview, thereby inferring that she was dishonest, which Beaubrun believes is a racial

stereotype.  Again, even assuming that Vandergrift intended to imply that Beaubrun was dishonest, there is no evidence that this was because of Beaubrun's race and/or age.  More significantly, this statement was made before Beaubrun was hired and Vandergrift still proceeded to hire Beaubrun even after allegedly questioning her credentials.  Unlike the comments the plaintiffs endured in Aman, three facially neutral comments over three days of employment do not qualify as severe and pervasive discrimination, especially because the comments were unrelated to each other and unrelated to Beaubrun's race or age.

In addition to these three comments, Beaubrun supports her hostile environment claim by stating that she was not properly greeted when she began work, her start date was delayed, her status as a supervisor was not correctly documented, staff members ignored her and gave her strange looks, she was asked to do "busy work because no one wanted to spend time with her," two out of her three staff members were absent when she started work, and her office was inferior to that of her supervisees.  These relatively minor incidents and inconveniences, while unfortunate, do not arise to the severity or frequency necessary to sustain a hostile environment claim.  Caver, 420 F. 3d at 262.  Additionally, Beaubrun provides no evidence that any comments or incidents were because of her race and/or age.  Viewing all of Beaubrun's claims of hostile environment along with the three verbal comments under the totality of the circumstances, I find that they were neither severe, extreme, nor pervasive; they did not unreasonably interfere with plaintiff's employment.

Beaubrun has not presented evidence sufficient to support her claims under Title VII, the ADEA, the PHRA, or § 1981; therefore, the defendants' motion for summary judgment on Counts One through Ten is granted.

D.  Assault

All the claims over which there was federal question jurisdiction were dismissed.  I exercise my right to dismiss the claim over which I had supplemental jurisdiction, therefore plaintiff's assault claim is dismissed.  28 U.S.C. § 1367 (c)(3).

**ORDER**

_____AND NOW, this _23rd__ day of September, 2008, it is **ORDERED** that Defendants' Motion for Summary Judgment (Doc. # 29) is **GRANTED,** the state claim is **DISMISSED,** and this case is **DISMISSED**.

_____s/Anita B. Brody_____

ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:            Copies **MAILED** on _____ to: